550 A.2d 219

**COMMONWEALTH of Pennsylvania**

v.

**Gerard Joseph KUBIAC, Appellant (Two Cases).**

Superior Court of Pennsylvania.

Submitted Sept. 1, 1988.

Filed Nov. 2, 1988.

404

406

Howard B. Elbling, Assistant Public Defender, Pittsburgh, for appellant.

Sandra Preuhs, Assistant District Attorney, Pittsburgh, for Com., appellee.

Before CIRILLO, President Judge, and ROWLEY and TAMILIA, JJ.

CIRILLO, President Judge:

This is an appeal from a judgment of sentence entered by the Court of Common Pleas of Allegheny County, sentencing the appellant, Gerard J. Kubiac, to consecutive terms of imprisonment for convictions on two counts of involuntary deviate sexual intercourse, to be followed by two consecutive terms of five years of probation for convictions on charges of corruption of minors and criminal conspiracy. The trial court sustained a demurrer to a charge of indecent assault.

Jennifer K. was removed from her father's custody because of incorrigibility, and placed in the foster care of Rhonda and Gerard Kubiac in June of 1985. She was then fifteen years of age. In February of 1986, a sexual relationship between Gerard Kubiac and Jennifer began, and continued until October of that year, when Jennifer became pregnant, and was removed from their care. According to Jennifer's testimony, Rhonda Kubiac joined in the sexual

activity in March, after having suggested to Jennifer that she have a child with Gerard.

Initially, Jennifer refused to press charges against the Kubiacs, believing that Gerard would obtain a divorce and live with her and the child. When Gerard, who had, in fact, filed for divorce, resumed his relationship with his wife, Jennifer agreed to bring charges against them.

The cases against Rhonda and Gerard Kubiac were joined for trial. They were convicted by a jury, and sentenced. Gerard Kubiac then filed a timely motion for a new trial and/or in arrest of judgment. He filed a motion for the commitment of a drug dependant person *pro se*. Both motions were denied. After sentencing, Mr. Kubiac filed a motion to modify sentence, which was also denied, and an untimely *pro se* motion to reconsider sentence. He appealed to this court from his sentences on convictions on charges of criminal conspiracy and corruption of minors, but failed to appeal the convictions on the two counts of involuntary deviate sexual intercourse. The trial judge, however, granted Mr. Kubiac's Post–Conviction Hearing Act petition, and reinstated his appellate rights *nunc pro tunc*. He then took a timely appeal to this court. Both appeals were consolidated.

On March 17, 1988, the trial judge, the Honorable Robert E. Dauer, entered an order stating that there had been a clerical error in the order of sentencing entered October 13, 1987, and correcting the sentence to impose a maximum of twenty years imprisonment. The original order of sentencing had stated that Mr. Kubiac had been sentenced to two consecutive terms of five to ten years imprisonment for involuntary deviate sexual intercourse. Mr. Kubiac petitioned this court for permission to file an amended brief, claiming that he only became aware of this change after reading the Commonwealth's brief. Permission was granted.

Mr. Kubiac argues six issues to us on appeal: (1) whether the trial court committed reversible error by allowing Jennifer K. to testify that he had allowed her to use alcohol and

marijuana when those offenses were not charged in the information; (2) whether the trial judge erred in refusing to grant his pretrial motion for a postponement; (3) whether the trial court erred in refusing to grant his pre-sentence motion for commitment as a drug dependent person under Act 64; (4) whether the trial court erred in failing to merge the crimes of corruption of minors and criminal conspiracy with the crime of involuntary deviate sexual intercourse and whether the sentence imposed was therefore illegal; (5) whether the sentence imposed was a manifest abuse of discretion; and (6) whether the trial court violated his right to be free from double jeopardy by correcting the order of sentence, increasing the term to be served.

Mr. Kubiac complains that the trial court erred in permitting Jennifer's testimony that the Kubiacs had permitted her, as well as another minor, to smoke marijuana and drink alcohol in their presence. He argues that this was error because this testimony went to the general charge of corruption of minors, and not the specific charge brought against him—corrupting morals through oral sexual intercourse. Because we agree with the trial court's determination that this evidence was relevant, and because we find that Mr. Kubiac was not prejudiced by this testimony, we find his claim to be meritless.

The admission or exclusion of evidence is within the sound discretion of the trial court; we will not overturn that determination absent an abuse of discretion. *Commonwealth v. Underwood*, 347 Pa.Super. 256, 262, 500 A.2d 820, 823 (1985). An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence or the record. *Id.; Commonwealth v. Niemetz*, 282 Pa.Super. 431, 445 n. 12, 422 A.2d 1369, 1376 n. 12 (1980).

A review of the record indicates that that is not the case here. Jennifer did testify that the Kubiacs allowed her and another foster child to smoke marijuana and drink

alcohol. Mr. Kubiac argues that this testimony was irrelevant, that is, that it did not tend to prove the specific crimes charged in the information against him. The trial judge found that the testimony in question was relevant to demonstrate the nature of the relationship between Jennifer and the Kubiacs. According to the trial judge, this testimony tended to show that that relationship was such that the charged conduct could have occurred. We find that this determination was not manifestly unreasonable, and hold that the trial court did not abuse its discretion in admitting the testimony.

■ Mr. Kubiac also contends that Jennifer's testimony mentioned prior criminal activity on his part, and that, therefore, a mistrial should have been granted. The decision to grant or deny a mistrial depends upon whether or not improper evidence was admitted at trial that would so prejudice the fact finder that it would be unable to remain impartial, thereby prejudicing the accused beyond a reasonable doubt. *Commonwealth v. Larkins*, 340 Pa.Super. 56, 63, 489 A.2d 837 (1985). That decision is within the sound discretion of the trial court, and will not be reversed absent an abuse of that discretion. *Id.; Commonwealth v. Fields*, 317 Pa.Super. 387, 400, 464 A.2d 375, 382 (1983).

■ In this case, Jennifer testified to acts by the Kubiacs—permitting alcohol and drug consumption—which were presumably illegal. Although references to other criminal activities of an accused may be particularly prejudicial, there is no per se rule which demands a finding of such prejudice in every case in which references to criminal conduct occur. *Commonwealth v. Morris*, 513 Pa. 169, 175–76, 519 A.2d 374, 377 (1986); *Commonwealth v. Richardson*, 496 Pa. 521, 526, 437 A.2d 1162, 1165 (1981). Prejudice arises in cases where the testimony conveys to the jury, either expressly or by implication, the fact that a prior criminal offense has occurred. *Morris*, 513 Pa. at 176, 519 A.2d at 377. Where the statements may be termed merely "passing references," no reversal is warranted unless the record illustrates that the defendant has been

prejudiced by the testimony. *Commonwealth v. Thomas,* 361 Pa.Super. 1, 15, 521 A.2d 442, 449 (1987).

█ Here, although Jennifer's testimony might have conveyed to the jury the fact that criminal offenses were occurring in the household, we do not find that her statements that she was permitted to drink and use drugs in the presence of the Kubiacs deprived them of a fair and impartial trial. We agree with the Commonwealth's contention that the testimony included very brief and very generalized references to the alleged criminal activity, *Commonwealth v. Heaton,* 504 Pa. 297, 302, 472 A.2d 1068, 1071 (1984), and that such references could not have prejudiced Mr. Kubiac.

More importantly, we are convinced that no prejudice could have arisen from Jennifer's testimony because of the trial court's instruction to the jury on that subject. The trial court's instruction limited the effect of that evidence and effectively dissipated whatever prejudicial effect Jennifer's testimony could have had. *See Morris,* 513 Pa. at 178, 519 A.2d at 377 (1986) (cautionary instruction cured prejudice caused by mention of prior criminal activity); *Richardson,* 496 Pa. at 527, 437 A.2d at 1165 (prejudicial effect of reference to prior burglary cured by instruction). The trial court charged the jury that:

In these cases each of the defendants is charged with corruption of minors. Ladies and gentlemen, I am going to read to you exactly what they are charged with. You heard a lot of talk in the courtroom here, testimony about drinking and marijuana and whatever. That really is not charged in this case, ladies and gentlemen, the only reason I permitted it was to show that atmosphere in which the people lived. I think that's important in this case, but that is not charged against the defendants, but what you must find if you find the defendants guilty is that the defendants corrupted the morals of Miss K[.] by engaging in the act of involuntary deviate sexual intercourse.

Mr. Kubiac is charged a little bit differently [than his wife]. He's also charged with corruption of minors in

that it is alleged that between February, 1986 and June, 1986, he, being eighteen years of age or older, corrupted or tended to corrupt the morals of Jennifer K[.], a child under the age of 18 years, by the act of performing oral intercourse with the victim, Jennifer K[.].

This charge clearly set out what offenses were charged against Mr. Kubiac, and clearly limited the use of the evidence in question here. We find that the trial court's instruction properly informed the jury to what extent it could consider that portion of Jennifer's testimony, and that Mr. Kubiac therefore was in no way prejudiced by the admission of that evidence.

■ Mr. Kubiac also claims that the trial court erred in refusing to grant his request for a postponement of the trial. We adopt the opinion of the trial court which states in pertinent part:

Just prior to commencement of testimony defense counsel noted his objection [to the denial of his motion for postponement] of record. There, he expressed the apparent belief that some time was required to complete negotiations for a plea bargain, and that a continuance would be needed for that purpose.

The Commonwealth indicated that when it became clear no plea agreement was possible it informed defense counsel the case would have to be tried. None of these developments were known to the court. As far as the Court was aware, this case was scheduled to be tried on September 1, 1987. On that date the parties appeared for trial and the Commonwealth pronounced itself ready to proceed. Only then did the defense counsel request a postponement. Additionally, he did not on the record allege any particular prejudice resulting from being required to proceed as scheduled.

A request for a continuance is, of course, directed to the sound discretion of the Court, and will not be reversed in the absence of a showing of real prejudice. *Commonwealth v. Eackles*, 286 Pa.Super. 146, 428 A.2d 614 (1981). In this case the offenses charged were unwitnessed ex-

cept by the victim and the co-defendants. The Commonwealth's case took three days to present. Counsel had been appointed in sufficient time to prepare for trial. On this record no real prejudice is apparent from the court's ruling.

We find that the trial court did not abuse its discretion in refusing to grant the continuance.

Mr. Kubiac then argues that the trial court erred in summarily dismissing his "Motion for Commitment of Treatment Act 64 Pre–Trial Application for Relief of Drug Dependant Person." Although the caption uses the words "Pre–Trial Application for Relief," Mr. Kubiac did not present the motion until after the verdict, and just prior to sentencing. He argues that we should take into account the fact that the motion was filed *pro se,* and that therefore it should be construed liberally. *See Commonwealth v. Garrison,* 303 Pa.Super. 555, 557, 450 A.2d 65, 66 (1982) (*pro se* PCHA petitions should be read liberally). According to Mr. Kubiac, the motion should be treated as a request for relief under 35 Pa.S. § 780–118(f), which authorizes post-conviction relief. We agree that the motion, filed *pro se,* must be treated liberally, and we agree with both the Commonwealth and Mr. Kubiac that this is the only section of the act under which the motion could have been made. We find, however, that Mr. Kubiac's failure to raise this claim in his Motion to Modify Sentence failed to preserve the issue for our review.

■ There is very little caselaw in the Commonwealth discussing section 780–118(f), and none discussing the proper method of preserving a claim that the trial court erred in refusing to grant a motion under it. Examination of that subsection leads us to the conclusion that the decision whether or not to permit treatment in lieu of incarceration is a part of the sentencing procedure left to the sound discretion of the trial judge. Section 780–118 states:

§ 780–118. Disposition in lieu of trial or criminal punishment

\* \* \* \* \* \*

(f) If, after conviction, the defendant requests probation
with treatment or civil commitment for treatment in lieu
of criminal punishment the *court may appoint* a quali-
fied physician to advise the court in writing whether it
would be preferable for the purposes of treatment and
rehabilitation for him to receive a suspended sentence and
probation on the condition that he undergo education and
treatment for drug abuse and drug dependency, or to be
committed pursuant to the Mental Health and Mental
Retardation Act of 1966 for treatment in lieu of criminal
punishment, or to receive criminal incarceration. A copy
of the physician's report shall be furnished the court, the
defendant, and the government attorney. The *court
shall exercise its discretion whether to accept the physi-
cian's advice.*

35 Pa.S. § 780–118(f) (emphasis added). Clearly, this sec-
tion is to be considered by the court before imposing sen-
tence. The court is to use its discretion in making the
decision to first appoint a physician, and later, to accept
that physician's advice. Acceptance of a physician's advice
that the accused would benefit from treatment would result
in a suspended sentence and probation. Should the court
determine that the appointment of a physician is unneces-
sary, the sentencing would proceed as usual. These deter-
minations come within the discretionary power of the court
to sentence the convicted defendant. *See Commonwealth
v. Waters*, 361 Pa.Super. 154, 155, 522 A.2d 60, 62 (1987)
(legislature had limited trial court's discretionary authority
to impose suspended sentence and probation under section
780–118 by imposing mandatory minimum sentence for
drunken driving).

▉▉▉ Since Mr. Kubiac failed to include any claim that the
trial court improperly refused to appoint a physician to
advise it in his motion to modify sentence, or in his untimely
*pro se* motion to reconsider sentence, we find that claim
waived. *Commonwealth v. Turecki*, 278 Pa.Super. 511,
515–16, 420 A.2d 658, 660 (1980). We note further that by
failing to bring this claim to the attention of the trial court,

no discussion of the reasons that that court had for denying the motion appear on the record. We are, therefore, precluded from effective appellate review of this issue. *See Commonwealth v. Silver,* 499 Pa. 228, 238, 452 A.2d 1328, 1333 (1982) (so-called procedural violations may preclude court from exercising meaningful appellate review); *Commonwealth v. Holmes,* 315 Pa.Super. 256, 266–67, 461 A.2d 1268, 1273 (1983) (specificity of post-trial motions is required to enable court to review merits).

■■■ Even if we were to reach the merits of this claim, we would find Mr. Kubiac's arguments to be meritless. In *Commonwealth v. Waters,* we stated that section 780–118 did not apply to drunken drivers since 75 Pa.C.S. § 3731, which was enacted after section 780–118, provides for a mandatory minimum sentence of imprisonment. We pointed out that legislative enactment of a statute requiring a mandatory sentence removed from the trial judge the discretion to impose probation and a suspended sentence. *Waters,* 361 Pa.Super. at 155–56, 522 A.2d at 62–63. We find the same reasoning to be applicable here. The legislature enacted 42 Pa.C.S. § 9718 after the effective date of section 780–118. Section 9718 provided a mandatory five year sentence for defendants convicted of certain crimes against infants. Therefore, the trial judge had no discretion to apply section 780–118 in Mr. Kubiac's case. Moreover, we note that section 780–118 was meant to apply only in cases of nonviolent offenders. *See* 35 Pa.S. § 780–118(a). Mr. Kubiac was convicted of the offense of involuntary deviate sexual intercourse, committed against his fifteen year old foster daughter. As we stated in *Waters,* section 780–118 simply does not, and should not apply in this situation.

■■■■ Mr. Kubiac next complains that the trial court erred in failing to merge the crimes of criminal conspiracy and corruption of minors with the two counts of involuntary deviate sexual intercourse charged against him for sentencing purposes.[1] The Commonwealth is willing to concede

1. No objection was made to the sentences at sentencing, or in Mr. Kubiac's motion to modify sentence or his untimely motion to recon-

that the offenses of corruption of minors and involuntary deviate sexual intercourse should have merged for sentencing, and requests that we vacate the sentence imposed for the conviction of corruption of minors. The Commonwealth argues, however, that there is no merit to the claim that the charge of criminal conspiracy should have merged with the involuntary deviate sexual intercourse offenses.

■ Because criminal conspiracy never merges with the offense which was the object of the conspiracy, *Commonwealth v. Brachbill*, 363 Pa.Super. 615, 626, 527 A.2d 113, 119 (1987), we find the first portion of Mr. Kubiac's argument to be meritless. We find, however, that the Commonwealth is too quick to concede that the corruption of minors offense should merge with the crime of involuntary deviate sexual intercourse for the purposes of sentencing.

■ In order to determine whether separate statutory offenses merge for sentencing purposes, we must first determine whether the crimes in question necessarily involve each other. If that proves to be the case, we must then consider whether or not the statutes defining the crimes charged were directed to substantially the same harm or evil. *Commonwealth v. Williams*, 344 Pa.Super. 108, 126–27, 496 A.2d 31, 41–42 (1985) (en banc). In determining whether both offenses necessarily involve each other, we consider the elements of both offenses, but more importantly, we must examine the facts of both cases to determine if "the two crimes were so intimately bound up in the same wrongful act that as a *practical* matter of proof of one crime necessarily proves the other, so that they must be treated as the same offense." *Id.*, 344 Pa.Superior Ct. at 125, 496 A.2d at 40 (emphasis in the original); *Commonwealth v. Crocker*, 280 Pa.Super. 470, 475, 421 A.2d 818, 820 (1980).

sider sentence. This is, however, an issue of legality of the sentence, and can be raised at any time. *Commonwealth v. Norris*, 498 Pa. 308, 319 n. 9, 446 A.2d 246, 251 n. 9 (1982); *Commonwealth v. Cherpes*, 360 Pa.Super. 246, 269, 520 A.2d 439, 450 (1987).

■ Examination of the requisite elements of each crime shows that for both offenses, it is necessary to prove the act of deviate sexual intercourse. The corruption of minors offense requires proof of an act "corrupting or tend[ing] to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices, or encourages any such minor in the commission of any crime...." 18 Pa.C.S. § 6301(a). The crime of involuntary deviate sexual intercourse requires a showing that the person charged "engaged in deviate sexual intercourse with another person...." 18 Pa.C.S. § 3123. Here, each count of involuntary deviate sexual intercourse and the count of corruption of minors charged Mr. Kubiac with performing acts of oral intercourse on Jennifer. It would also be necessary to prove that Jennifer was less than eighteen years of age on the corruption of minors charge, and less than sixteen on the charges of involuntary deviate sexual intercourse. In fact, Jennifer was less than sixteen years of age. Proof of her age would satisfy elements of both offenses.

■ As a practical matter, then, the offenses can be said to necessarily involve each other. This, however, is not the only factor, nor is it the determinative factor in finding that offenses should merge for sentencing purposes. We must consider the purposes of the statutes in question. If there are substantially different interests at stake, and the defendant has harmed each of those interests, then even if each offense necessarily involves the other, they will not merge. *Commonwealth v. Williams*, 514 Pa. 124, 135, 522 A.2d 1095, 1101 (1987); *Commonwealth v. Heckman*, 366 Pa.Super. 224, 229, 530 A.2d 1372, 1374 (1987). Mr. Kubiac claims that each statute is concerned with the same interest: punishment of deviate sexual intercourse with minors. We disagree, and find that the case is controlled by *Commonwealth v. Heckman, supra.*

■ In *Heckman*, appellant was charged and convicted, *inter alia*, with corruption of minors and involuntary deviate sexual intercourse for the sexual assault of a five year old child. A panel of this court, relying on *Commonwealth*

v. *Bonadio*, 490 Pa. 91, 415 A.2d 47 (1980) and *Commonwealth v. Sayko*, 511 Pa. 610, 515 A.2d 894 (1986), held that the crimes of corruption of minors and involuntary deviate sexual intercourse did not merge for sentencing purposes:

> [W]e find that, even if these crimes necessarily involve one another, substantially different Commonwealth interests have been injured by the appellant's act. At stake with respect to the *offense of involuntary deviate sexual intercourse is the Commonwealth's interest in preventing people from being forced against their will to submit to sexual conduct and in preventing minors from being sexually used by adults, see Commonwealth v. Bonadio* ... while ... the offense of *corruption of minors involves the Commonwealth's interest in protecting minors from corrupting influences,* "the consequences of which may follow them all their days," *Commonwealth v. Sayko*.... *These are substantially different interests,* in our view, each of which has been injured by appellant's conduct in this case.

*Id.*, 366 Pa.Superior Ct. at 229–30, 530 A.2d at 1374 (footnote omitted) (emphasis added).

The panel in *Heckman* perhaps stated the purpose behind the corruption of minors statute more generally than is appropriate here. The purpose behind 18 Pa.C.S. § 6301, proscribing the corruption of minors, clearly includes corruption by sexual acts. Any other interpretation would ignore this court's previous decisions holding that the offenses of statutory rape and corruption of minors merge for the purposes of sentencing. *Commonwealth v. Stafford,* 307 Pa.Super. 278, 283–84, 453 A.2d 351, 353–54 (1982); *Commonwealth v. Reidenbaugh,* 266 Pa.Super. 315, 325, 404 A.2d 697, 702 (1978); *Commonwealth v. Cox,* 209 Pa.Super. 457, 466, 228 A.2d 30, 35 (1967). According to the supreme court in *Bonadio,* both of these offenses protect minors from being sexually used by adults:

> The state clearly has a proper role to perform in protecting the public from inadvertent offensive displays of sexual behavior, in preventing people from being forced

against their will to submit to sexual contact, in *protecting minors from being sexually used by adults,* and in eliminating cruelty to animals. To assure these protections, a broad range of criminal statutes constitute valid police power exercises, including proscriptions of indecent exposure, open lewdness, rape, involuntary deviate sexual intercourse, indecent assault, *statutory rape, corruption of minors,* and cruelty to animals.

*Bonadio,* 490 Pa. at 95, 415 A.2d at 49 (emphasis added).

While one provision of the involuntary deviate sexual intercourse statute also protects minors from being sexually used by adults, *see* 18 Pa.C.S. § 3123(5), the purpose of that general section is more broadly drawn. Unlike those statutes which proscribe statutory rape and corruption of minors, it clearly protects persons, not only minors, from being forced against their will to submit to sexual conduct. *See Heckman,* 366 Pa.Super. at 229–30, 530 A.2d at 1374; *Commonwealth v. Maute,* 336 Pa.Super. 394, 409, 410, 485 A.2d 1138, 1146 (1984). This is similar to the situation in *Commonwealth v. Sayko, supra.* In that case, the supreme court stated:

In the instant case ..., there were two fundamentally different Commonwealth interests involved when the defendant committed the act comprising indecent exposure in the presence of his minor victim. Not only did the defendant violate the Commonwealth's interest in proscribing exhibitionism *and in shielding any victim* from such conduct, he also *violated the Commonwealth's interest in protecting minors from corrupting influences,* the consequences of which may follow them all their days.

*Sayko,* 511 Pa. at 616, 515 A.2d at 897 (emphasis added). Two interests were also involved here, the interest of the Commonwealth in preventing persons from being forced against their will to participate in sexual conduct, as well as the Commonwealth's interest in proscribing the sexual use of minors by adults, which would obviously subject them to corrupting influences. Merely because the elements of the

crimes were the same in this particular instance, that is, because the particular subsection of 18 Pa.C.S. § 3123 proscribed deviate sexual conduct with persons under the age of sixteen, *see* 18 Pa.C.S. § 3123(5), and Jennifer K. was under the age of sixteen at the time the offenses were committed, does not mean that the offenses merge. Here, the statutes were not directed at the same harm or evil. *Williams*, 344 Pa.Super. at 126–27, 496 A.2d at 41–42.

Mr. Kubiac also complains that the trial court abused its discretion in imposing sentence. He has complied with *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987), and Pa.R.A.P. 2119(f), and has included a statement of reasons relied on for appeal in his brief. We find, however, that his statement still does not raise a substantial question that the Sentencing Code as a whole has been compromised. *Tuladziecki*, 513 Pa. at 515, 522 A.2d at 20.

In his statement, Mr. Kubiac has included both the crime for which he was convicted and the length of sentence imposed, in accordance with *Commonwealth v. Cummings*, 368 Pa.Super. 341, 343–44, 534 A.2d 114, 115 (1987). The remainder of his statement only complains that the circumstances of the case—by which we take to mean the age of the victim and her consent to the deviate sexual activity—should have precluded the trial judge from imposing consecutive rather than concurrent sentences. "It is only where a party can articulate reasons why a particular sentence raises doubts that [the sentencing] scheme as a whole has been compromised that the appellate court should review the manner in which the trial court exercised its discretion." *Tuladziecki*, 513 Pa. at 515, 522 A.2d at 20. Statements that a court failed to imbue elements picked by appellant out of the whole factual picture with the proper amount of importance are not sufficient to raise a substantial question. For this reason, we find that Mr. Kubiac has waived this portion of his appeal.

Mr. Kubiac's final argument concerns the correction made by Judge Dauer to the sentencing order. Although

the judge stated on the record at the sentencing hearing that Mr. Kubiac was sentenced to a term of imprisonment of five to twenty years, the sentencing order signed by the judge stated that the sentence was five to ten years imprisonment. Mr. Kubiac claims that this correction violates the protection against double jeopardy because the court increased the sentence after he began to serve it.

█ The double jeopardy clause of the fifth amendment of the federal constitution protects an individual from being subject to the hazards of trial and possible conviction more than once for the same offense, *Green v. United States*, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957), and also prevents imposition of multiple punishments for the same offense, *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). Mr. Kubiac argues here that his right to be free from multiple punishments was violated because the sentencing court in correcting what it stated was a clerical error in the sentencing order, but which, in fact, increased his sentence as stated in that order from a ten-year maximum to twenty years on each of the two counts of involuntary deviate sexual intercourse.

█ In this case, at the sentencing hearing, on the record, the trial court sentenced Mr. Kubiac to a twenty-year maximum term of imprisonment for each of the involuntary deviate sexual intercourse offenses. However, it is well-settled that the signed sentencing order takes precedence over oral statements of the sentencing court not incorporated into that order. *Commonwealth v. Isabell*, 503 Pa. 2, 12, 467 A.2d 1287, 1292 (1983); *Commonwealth v. Adams*, 350 Pa.Super. 506, 511, 504 A.2d 1264, 1266 (1986). It is equally clear that the sentencing court may correct clerical errors regarding a sentence. *Isabell*, 503 Pa. at 12, 467 A.2d at 1292; *Adams*, 350 Pa.Super. at 511, 504 A.2d at 1266; *Commonwealth v. Meyer*, 169 Pa.Super. 40, 43, 82 A.2d 298, 200 (1951). This power, is, however, bounded by considerations of timeliness on the part of the trial court, *see* 42 Pa.C.S. § 5505 (court may modify or

rescind order within thirty days if no appeal is taken), and on the part of the aggrieved party, *see* Pa.R.Crim.P. 1410 (appellant must file motion to modify sentence within ten days). The supreme court of this Commonwealth has also indicated that that power is bounded by constitutional considerations, chiefly, double jeopardy concerns. *Brown v. Brown,* 455 Pa. 274, 276–77, 314 A.2d 506, 509 (1974); *Commonwealth v. Allen,* 443 Pa. 96, 103–04, 277 A.2d 803, 806 (1971).

In *Commonwealth v. Allen,* the appellant was sentenced on one bill of indictment to not less than two and one-half to no more than eight years imprisonment, and on another to not less than one to no more than two years imprisonment. He filed a Post Conviction Hearing Act Petition challenging the lawfulness of his sentences; the trial court then switched the sentences from each bill of indictment to the other.

The supreme court discussed the question of whether the trial court could properly augment an existing sentence. It rejected the Commonwealth's argument that the trial judge had merely transposed the sentences, and was attempting to correct them to conform to her original intentions. It declined to create an exception in this case to the rule that modification of a sentence imposed on a criminal defendant which increased the punishment constituted double jeopardy. *Allen,* 443 Pa. at 103–104, 277 A.2d at 806. That court stated:

> First, the record reveals those sentences were orally imposed *and* recorded on the indictments. Moreover, no attempt was made to correct these sentences for over one year. Thus, there is at least a possibility that the sentences originally imposed by the second judge did not represent a "slip of the tongue."

> Second, the Supreme Court long ago concluded that increasing a sentence after the defendant has commenced to serve it is a violation of the double jeopardy clause, *Ex Parte Lange* ..., and we are in agreement with those jurisdictions holding there is no exception to *Lange* in the

situation where the increase is allegedly designed to reflect the judge's true intent.... Nor can the instant appeal be equated with the situation in *Commonwealth v. Meyer* ..., wherein it was held that a trial judge could correct a clerk's erroneous docket entry.

*Id.*, 443 Pa. at 104, 277 A.2d at 806–807 (emphasis in original).

This same result was reached by that court in *Commonwealth v. Brown, supra,* where again, the trial court attempted to augment an existing sentence. The court originally imposed a sentence of eight and one-half to ten years, resentencing the appellant on the order of the federal district court, and then three days later attempted to correct the sentence by increasing the maximum to twenty years imprisonment. The Commonwealth argued, again, that the first sentence was a mere "slip of the tongue." Again, the supreme court refused to create an exception, relying, in part, on *Allen,* and the United States Supreme Court decision of *Ex Parte Lange,* 85 U.S. (18 Wall) 163, 21 L.Ed. 872 (1873), cited in that case. As it had in *Allen,* the court expressed its concern that " 'such alleged inadvertence cannot be tolerated as a matter of public policy. As best stated by the Second Circuit, "[t]he possibility of abuses inherent in broad judicial power to increase sentences outweighs the possibility of windfalls to a few prisoners." ' " *Brown,* 455 Pa. at 278, 314 A.2d at 509 (quoting *Allen,* 443 Pa. at 105, 277 A.2d at 807 and *United States v. Sacco,* 367 F.2d 368, 370 (2nd Cir.1966)).

Our own court has followed this rationale in *Commonwealth v. Thomas,* 219 Pa.Super. 22, 280 A.2d 651 (1971). In that case, the trial judge orally sentenced the appellant to a term of imprisonment of not less than one year to not more than three years on Bill # 33, and suspended sentences on Bills # 34 and # 35. The indictments on Bills # 33 and # 34 which the judge had signed, however, stated "11–1–67 Sentence suspended Sentence on Bill No. 35," and on the indictment on Bill # 35, the sentence was listed as a term of imprisonment of not less than one year to not more

than three years. A panel of this court held that to allow amendment of the sentence would be to create double jeopardy problems. The panel quoted extensively from *Allen,* and held that *Meyer,* allowing clerical revisions, was distinguishable because here, the error was not clerical, but was the error of the sentencing judge. *Id.,* 219 Pa.Superior Ct. at 27, 280 A.2d at 652–53.

It would seem that our course, then, is to vacate the sentence calling for a mandatory twenty years imprisonment, and reinstate the sentence originally written on, the indictment, which set the maximum term at ten years imprisonment. There are two factors which we must consider before deciding to reach that disposition. Firstly, *Ex Parte Lange,* the Supreme Court case upon which *Allen,* and therefore *Brown* and *Thomas,* rely, has since been limited to its facts by that Court. In *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), the Supreme Court held that *Lange* did not state a blanket rule that the trial judge could never increase a sentence if the defendant had begun to serve that sentence. *Id.* at 138–39, 101 S.Ct. at 438–39. A panel of this court in *Commonwealth v. Adams, supra,* has pointed out that the Supreme Court's decision in *DiFrancesco* throws into some doubt the rationale and holding in both *Allen* and *Thomas,* and has accepted the less expansive reading of the double jeopardy rule espoused by the *DiFrancesco* Court. The *Adams* court held that the error in recording sentences on the wrong bills of indictment was clerical, and therefore could be corrected. *Adams,* 350 Pa.Super. at 513, 504 A.2d at 1268, relying on *Commonwealth v. Ford,* 315 Pa.Super. 281, 461 A.2d 1281 (1983) (trial court incorrectly sentenced appellant to three inchoate offenses which merged with ultimate crime, correction of sentence did not result in double jeopardy because merely substituting new sentences for vacated sentence) and *Commonwealth v. Bailey,* 250 Pa.Super. 402, 378 A.2d 998 (1977) (trial court found offenses to merge which did not, permitting trial court to correct error of law did not increase punishment, but merely modified sentence to base it on valid conviction). Fur-

ther, although the *Adams* court stated, in dicta, that an increase in sentence would violate the double jeopardy clause, *id.*, it is not clear that that is the case here. We do not agree that the correction here increases the sentence. The sentence given and recorded at the sentencing hearing was five to twenty years on the involuntary deviate sexual intercourse counts, and Mr. Kubiac was aware of that fact, as is evident from his untimely motion to reconsider sentence.

Secondly, while the supreme court in *Brown* did note that the thrust of the *Allen* opinion was toward a prophylactic rule, *id.*, to apply that rule here would be illogical. In *Allen*, the trial court attempted to change a sentence orally given, and written on the indictment. *Id.*, 443 Pa. at 104, 277 A.2d at 806. *Brown* involved a similar scenario. *Brown*, 455 Pa. at 275, 314 A.2d at 507–508. Here, the sentence was stated initially at twenty years maximum on both counts of involuntary deviate sexual intercourse. This is reflected by the record of the sentencing hearing, the judge's notes, the court reporter's notes, and the notes of the institution. Further, in his untimely motion for reconsideration of sentence, Mr. Kubiac stated that his sentence was ten to forty years imprisonment. With such documentation, no abuse is possible. We are not dealing with a "slip of the tongue" on the part of the sentencing judge, as were the *Allen* and *Brown* courts. We believe that the remarks of the *Allen* court stating that to allow corrections would be against public policy and that " '[t]he possibility of abuses inherent in broad judicial power to increase sentences outweighs the possibility of windfalls to a few prisoners,' " *Allen*, 443 Pa. at 105, 277 A.2d at 807 (quoting *United States v. Sacco*, 367 F.2d 368, 370 (2nd Cir.1966), have no relevance here.

While we are aware that the trial judge had signed the order, and therefore ideally should have known of the error, we believe that to make such a decision contravenes common sense, and creates an injustice. "The same may be said here as was said of the appellant in [*Commonwealth*

426

*v.*] *Bailey* [, 250 Pa.Super. 402, 378 A.2d 998 (1977)]: He would receive an undeserved windfall if the trial court could not correct its sentence. It would be undeserved because it would be based on a clerical error—the trial court's mistake in correcting its order...." *Adams,* 350 Pa.Super. at 513, 504 A.2d at 1268. We cannot accept the reasoning in *Thomas* that an oral sentence which is on the record, written incorrectly by the clerk of courts, and then corrected by the trial judge, is not a clerical error. The error here was clearly a clerical one, and subject to correction under *Commonwealth v. Meyer, supra.*

For the foregoing reasons, the judgment of sentence is affirmed.